IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY, )
   1333 North Oracle Road )
   Tucson, AZ 85705 )
 )
        Plaintiff, )
 )
v. )
 )
CRAIG MANSON, Assistant Secretary for Fish and )
   Wildlife and Parks, )
   Department of Interior, )
   1849 C Street, NW )
   Washington, DC 20240 )
 ) Civil Action No.:
GALE NORTON, Secretary of the Interior, )
   Department of the Interior )
   1849 C Street, NW )
   Washington, DC 20240 )
 )
MATTHEW J. HOGAN, Acting Director, )
   U.S. Fish and Wildlife Service )
   1849 C Street, NW )
   Washington, DC 20240 )
 )
ROWAN GOULD, Regional Director, )
   Alaska Region (R7) )
   U.S. Fish and Wildlife Service )
   1011 E. Tudor Road )
   Anchorage, AK 99503 )
 )
        Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action for declaratory judgment and injunctive relief in which Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") challenges Defendants CRAIG MANSON, Assistant Secretary for Fish and Wildlife and Parks, GALE NORTON, Secretary of the Interior, MATTHEW J. HOGAN, Acting Director of the United States Fish and Wildlife Service, and ROWAN GOULD, Regional Director of the United States Fish and Wildlife Service, Alaska Region's (collectively referred to as

"the Service's") failure to fulfill its mandatory duty to finalize the proposed rule to list the southwest Alaska distinct population segment ("DPS") of the northern sea otter (*Enhydra lutris kenyoni*) under the federal Endangered Species Act ("ESA").

2.   Northern sea otters, found only in the North Pacific Ocean, are considered a "keystone" species, which means that sea otters strongly influence the composition and diversity of their environment. There are two sea otter subspecies in the North Pacific Ocean: *E. lutris lutris*, which is found in Russian waters near the Kuril Islands, the Kamchatka Peninsula, and the Commander Islands; and *E. lutris kenyoni*, which is found in the waters near the Aleutian Islands in Southwestern Alaska through the coastal waters of British Columbia and Washington State. A third subspecies, known as the southern sea otter (*E. lutris nereis*), can be found off of coastal California.

3.   *E. lutris kenyoni* is comprised of three distinct population segments that are separated by geographic barriers and are genetically and morphologically distinct from each other. The population at issue here, the southwest Alaska DPS of the northern sea otter, ranges from the Aleutian Islands, through the Alaska Peninsula and the Kodiak Archipelago, and into the western portions of Cook Inlet, Alaska.

4.   In the mid-1970s, the southwest Alaska DPS of the northern sea otter contained an estimated 94,000-128,000 individuals, and subsequently it was believed that the population contained 80% of the world's total sea otter population.

5.   However, around 1985, this DPS began one of the most widespread and precipitous population declines in recorded history. By the year 2000, scientists had discovered that only a few thousand sea otters remained in the Aleutian Islands, but were hopeful that the decline had stabilized, or at least slowed.

6. In response to this massive decline, the Center filed a petition to list the southwest Alaska northern sea otter DPS as "endangered" under the Endangered Species Act with the Service on October 26, 2000.

7. Since the filing of the petition, the Service continuously failed to meet the mandatory response timelines required by the Endangered Species Act despite the fact that time was of the essence in conserving and recovering this rapidly declining species. It was not until February 11, 2004—mere weeks after the Center filed a lawsuit against the Service for failing to respond to the Center's petition—that the Service published in the Federal Register a proposed rule to protect the southwest Alaska northern sea otter DPS under the Endangered Species Act. 69 Fed. Reg. 6600.

8. The publication of the proposed rule triggered mandatory protection deadlines under the ESA that the Service is obligated to meet. Specifically, the Endangered Species Act requires the Service to finalize a proposed rule to list a species within twelve months as specified in Section 4 of the ESA, 16 U.S.C. § 1533.

9. However, since the proposed rule was published in the Federal Register on February 11, 2004, the Service has not made a final determination on whether to list the southwest Alaska DPS of northern sea otters.

10. Meanwhile, recent studies have concluded that the hope held by scientists that the decline had slowed or been arrested was misplaced. In a publication issued in the peer-reviewed scientific journal "Marine Mammal Science," several scientists—including the Service's own experts in sea otter biology and abundance—published a study showing that sea otters have continued to decline in the southwest Alaska northern sea otter DPS, and potentially at a faster rate than ever before.

11. While the Service has engaged in its unlawful delays, literally thousands of additional sea otters have been lost.

12. The Service's failure to make a final determination on the proposed rule to list the southwest Alaska northern sea otters is impeding the species' recovery and puts the continued existence of the species at great risk. The Service is thus violating its mandatory duty to make a 12-month final determination on the proposal to list the imperiled northern sea otters, leaving them in danger of extinction.

## NATURE OF THE ACTION

13. The Center seeks declaratory judgment and injunctive relief against the Service for its continued failure to comply with the Endangered Species Act. The Service has failed to make a 12-month finding on the proposed rule to list the southwest Alaska DPS of northern sea otters. The Service has thus violated Section 4 of the Endangered Species Act and/or the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540 (c) & (g) (action arising under the ESA citizen suit provision). Alternatively, this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and/or 28 U.S.C. § 1346 (United States as a defendant).

15. An actual and present controversy exists between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

Complaint for Declaratory Judgment and Injunctive Relief

16. Venue is properly vested in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) as the Service officially resides in Washington, D.C.

17. Relief is appropriate pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, 5 U.S.C. §§ 701 et seq., and 16 U.S.C. § 1540(g)(1).

18. On March 3, 2005, the Service, pursuant to 16 U.S.C. § 1540(g)(2)(c), received a 60-day notice of intent to sue regarding its failure to finalize the proposed rule to list the southwest Alaska northern sea otter distinct population segment as threatened and its failure to designate critical habitat for this DPS.

19. More than sixty days have passed since the Service received the 60-day notice letter. The Service has not acted to remedy its violations of law notwithstanding such notice.

## PARTIES

20. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation with over 13,000 members and offices in San Diego, Joshua Tree, and Oakland, California; Washington, D.C.; Portland, Oregon; Tucson and Phoenix, Arizona; and Silver City, New Mexico. The Center is dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, and public lands. The Center's members and/or staff use and enjoy, and intend to continue to use and enjoy, lands and waters where the northern sea otters are found for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities. The Center's members and/or staff have researched, studied, and observed the southwest Alaska DPS of northern sea otters and intend to research, study, and observe this species

in the future. The Center's members and/or staff are being adversely affected and irreparably injured by the Service's continued violations of the Endangered Species Act. The Center brings this suit on its own behalf and on behalf of its adversely affected members and staff.

21. Defendant CRAIG MANSON is sued in his official capacity as the Assistant Secretary for Fish and Wildlife and Parks within the Department of Interior. Assistant Secretary Manson is charged with administrating the Endangered Species Act, including review and approval of proposed listing decisions for endangered and threatened species.

22. Defendant GALE NORTON is sued in her official capacity as the Secretary of the Interior. The Secretary is the federal official charged with listing species as endangered or threatened under the ESA.

23. Defendant MATTHEW J. HOGAN is sued in his official capacity as the Acting Director of the U.S. Fish and Wildlife Service. The Service has been delegated responsibility for implementing the Endangered Species Act.

24. Defendant ROWAN GOULD is being sued in his official capacity as the Service's Regional Director, Alaska Region. The Service's Alaska Region has jurisdiction over species in Alaska, including the northern sea otter.

## ENDANGERED SPECIES ACT

25. The Endangered Species Act is a federal statute designed to conserve endangered and threatened species and the ecosystems upon which those species depend. 16 U.S.C. § 1531(b).

Complaint for Declaratory Judgment
and Injunctive Relief

26. To achieve these objectives, the Service is required to protect such species by listing them as either "threatened" or "endangered" if they are facing extinction due to any one, or any combination of, the following factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;
(B) over-utilization for commercial, recreational, scientific, or educational purposes;
(C) disease or predation;
(D) the inadequacy of existing regulatory mechanisms; or
(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).

27. A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

28. A species receives mandatory substantive protections under the Endangered Species Act if and only if it is listed as endangered or threatened.

29. After a proposal to list a species as endangered or threatened is published in the Federal Register, the Service must make a final determination on the proposed rule within one year following publication. 16 U.S.C. § 1533(b)(6).

30. In making this decision, the Service must conduct a thorough "review of the status of the species" and base its conclusions "solely on the . . . best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A).

## THE NORTHERN SEA OTTER (*E. lutris kenyoni*)

31.     Sea otters are the smallest of all marine mammals. They have a long, heavy body, making terrestrial travel clumsy and slow. They are seldom seen on shore. On the ocean surface, sea otters usually swim belly up, with forepaws on their chests while paddling with their hind feet. Under water, sea otters propel themselves through the ocean using an undulating swimming motion, not unlike other marine mammals. Sea otters sleep in kelp beds or in calm water while floating on their backs.

32.     Recent studies have confirmed that three distinct sea otter subspecies exist. The Service has accepted and adopted these findings for purposes of the Endangered Species Act. The three subspecies are *Enhydra lutris kenyoni*, *E. lutris lutris*, and *E. lutris nereis*.

33.     *E. lutris kenyoni* and *E. lutris lutris* are both commonly referred to as the "northern sea otter." *E. lutris kenyoni* is distributed from the Aleutian Islands in Alaska, across the Pacific Coast of Alaska and British Columbia, to the coastal areas of Washington. *E. lutris lutris* is found in the Kuril Islands, the Kamchatka Peninsula, and the Commander Islands in Russia.

34.     *E. lutris nereis* is commonly referred to as the "southern sea otter." It is found in coastal waters along California.

35.     Under the Endangered Species Act, "the term 'species' includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). Thus, the Act's protections extend to not only species and subspecies, but also

to any distinct population segment of any species or subspecies of vertebrate fish or wildlife.

36. The Service has determined that the subspecies *E. lutris kenyoni* is comprised of three distinct population segments as the term is defined in the Endangered Species Act. One of these populations is referred to as the "southwest Alaska northern sea otter DPS." This DPS ranges from Attu Island in the Aleutians through the western shores of Cook Inlet, and includes the Alaska Peninsula and the Kodiak Archipelago in Alaska. This area constitutes a significant portion of the range of the subspecies as defined in the ESA because it is a major geographic area within the range of the subspecies and because, when healthy, it contains the largest population of sea otters on Earth.

37. Extensive commercial hunting of sea otters during the 18th and 19th centuries decimated the species. Prior to this, the sea otter population was estimated at 150,000–300,000 individuals. By the time sea otters were afforded international protection in 1911, the species was nearly extinct throughout its range, with only 1,000 to 2,000 individual animals remaining alive. These remaining animals were scattered throughout the species' former range in 13 isolated populations.

38. Once commercial harvests ceased, these populations began to grow and recolonize their former range. In the Aleutian Islands, survey data indicate that otters were present in all island groups in the Aleutians by the 1980s, and that the population had increased such that the southwest Alaska northern sea otter DPS contained as much as 80% of the sea otters on Earth.

Complaint for Declaratory Judgment
and Injunctive Relief

39. However, the southwest Alaska Northern sea otter DPS has recently undergone massive population declines. Between 1985 and 2000, the population crashed from a peak of over 128,000 individuals to about 40,000. Subsequent studies have indicated that the decline has continued and perhaps been exacerbated; if preliminary results hold true and can be extrapolated throughout the DPS's range, there may be fewer than 20,000 sea otters in this DPS today.

40. The southwest Alaska northern sea otter DPS suffers from several threats that can be addressed by the Endangered Species Act. These threats include toxic contamination, disease, starvation, predation, and the collapse of the Bering Sea ecosystem due to a variety of anthropogenic factors.

### THE SERVICE'S PROPOSED RULE TO PROTECT THE SOUTHWEST ALASKA DPS OF NORTHERN SEA OTTER UNDER THE ENDANGERED SPECIES ACT

41. In response to this dramatic decline and loss of northern sea otters, the Center submitted a petition on October 25, 2000 requesting that the Service list the southwest Alaska northern sea otter DPS as endangered.

42. However, rather than comply with its mandatory Endangered Species Act duties, the Service subsequently published in the Federal Register a notice that the DPS had been designated as a candidate species under the Endangered Species Act. <u>Endangered and Threatened Wildlife and Plants; Notice of Designation of the Northern Sea Otter in the Aleutian Islands as a Candidate Species</u>, 65 Fed. Reg. 67343 (Nov. 9, 2000).

43. On November 15, 2000, the Center filed a 60-day notice of intent to sue the Service for violations of the Endangered Species Act in response to the Service's

Complaint for Declaratory Judgment
and Injunctive Relief

November 9, 2000 candidate notice for the southwest Alaska northern sea otter DPS. The letter alleged that deeming the listing of this population to be "warranted but precluded" via candidate classification violated the ESA because the Service could not claim that there were any species of higher listing priority within the Alaska Region. The Service did not respond to the Center's letter.

44. On October 30, 2001, the Service published a Candidate Notice of Review (hereinafter "2001 CNOR") that ostensibly constituted a "recycled petition" finding on the Center's listing petition. Endangered and Threatened Wildlife and Plants; Review of Plant and Animal Species That Are Candidates or Proposed for Listing as Endangered or Threatened, Annual Notice of Findings on Recycled Petitions, and Annual Description of Progress on Listing Actions; Proposed Rule, 66 Fed. Reg. 54808 (Oct. 30, 2001). In the 2001 CNOR, the Service stated that "immediate action is needed" to list the southwest Alaska DPS of northern sea otter because there was "no indication that the decline has reached an endpoint," yet the Service nonetheless determined that publication of a proposed rule to list the species was precluded by higher-priority listing actions. Id. at 54816.

45. On June 13, 2002, the Service published another Candidate Notice of Review (hereinafter "2002 CNOR") that again "recycled" the "warranted but precluded" finding for the southwest Alaska northern sea otter DPS. Endangered and Threatened Wildlife and Plants; Review of Species That Are Candidates or Proposed for Listing as Endangered or Threatened; Annual Notice of Findings on Recycled Petitions; Annual Description of Progress on Listing Actions, 67 Fed. Reg. 40657 (June 13, 2002). In the 2002 CNOR, the Service restated that "immediate action is needed" to list the population.

Complaint for Declaratory Judgment
and Injunctive Relief

However, unlike the 2001 CNOR, the Service also stated that it must "work in the next year on proposed rules for . . . the southwest Alaska population of the northern sea otter" as a justification for making "warranted but precluded" findings on this DPS and literally hundreds of other species in dire need of Endangered Species Act protection. Id. at 40665.

46. On December 4, 2003, the Center filed a complaint for injunctive and declaratory relief in United States District Court, Northern District of California, against the Service. Requested relief included a permanent injunction for the Service to issue a 12-month finding on the Center's petition to list the southwest Alaska northern sea otter DPS as endangered.

47. Subsequently on February 11, 2004—almost four years after the Center filed its listing petition—the Service officially published in the Federal Register a proposed rule to list the southwest Alaska northern sea otter DPS under the Endangered Species Act. 69 Fed. Reg. 6600 (Feb. 11, 2004).

48. The proposed rule stated that sea otters are an important element of their habitat, serving as a "keystone species, strongly influencing the composition and diversity of their environment." Id. at 6602. It also acknowledged that the precipitous decline in the northern sea otter population may continue unless protective provisions are put in place. Id. at 6617.

49. The proposed rule posited that the DPS's decline may be the result of killer whale predation, which may itself be a result of significant changes in the Bering Sea ecosystem. However, the proposed rule stated that "the ultimate cause remains

Complaint for Declaratory Judgment
and Injunctive Relief

unknown," and that regardless of the cause, there is no reason to believe that the population decline will abate without intervention. Id. at 6617.

50. The proposed rule again emphasized that "[regardless] of its cause, the severity and widespread nature of the decline in the southwest Alaska sea otter DPS is quite serious." Id. at 6617.

51. The proposed rule stated that listing a species to be protected by the Endangered Species Act results in "public awareness and conservation actions by Federal, State, and local agencies, private organizations, and individuals." Id. at 6618.

52. Although the Service stated in its proposed rule that the decline of this DPS is "quite serious," and that listing a species to be protected by the Endangered Species Act will result in conservation actions by government agencies—likely the government agencies responsible for the majority of the DPS's habitat—the Service has not yet made a final determination on its proposed rule. Id. at 6617-18.

## THE SERVICE'S ABUSE OF THE ENDANGERED SPECIES ACT LISTING PROCESS

53. After a proposal to list a species as endangered or threatened is published in the Federal Register, the Service must make a final determination on the designation within the one-year period following publication of the proposed rule. 16 U.S.C. § 1533(b)(6).

54. The Service proposed to list the southwest Alaska northern sea otter DPS on February 11, 2004. Pursuant to the Endangered Species Act, the Service was thus required to make a final determination on the proposed listing rule by February 11, 2005.

Complaint for Declaratory Judgment
and Injunctive Relief

55. It is now well past February 11, 2005. The Service has not finalized the proposed rule to list the southwest Alaska DPS of northern sea otters as threatened.

56. The failure to finalize the proposed listing is thus violations of a non-discretionary duty imposed on the Service by the ESA. In the face of such an ongoing violation, courts are required to "order the Service to perform such act or duty" pursuant to the ESA, 16 U.S.C. § 1540(g)(1), and to "compel agency action unlawfully withheld or unreasonably delayed" pursuant to the APA. 5 U.S.C. § 706(1).

## CLAIM FOR RELIEF

### Failure to Make a Final Determination on the Proposed Rule to List the Southwest Alaska Northern Sea Otter DPS
### (Violation of 16 U.S.C. § 1533(b)(6)(A)(i))

57. Each and every allegation set forth in this Complaint is incorporated herein by reference.

58. The Service is violating the Endangered Species Act by failing to make a final determination on the proposed rule to list the southwest Alaska northern sea otter DPS by the statutory deadline. By not making a final determination, the Service is failing to perform a non-discretionary duty under the ESA, 16 U.S.C. § 1533(b)(6)(A)(i), and/or acting in a manner that violates the ESA within the meaning of the APA, 5 U.S.C. § 706.

## REQUEST FOR RELIEF

59. FOR THESE REASONS, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

A. A declaratory judgment that the Service is violating the ESA and APA by failing to comply with its mandatory duty to make a final determination on the Service's proposed rule to list the southwest Alaska northern sea otter DPS;

B. Injunctive relief requiring the Service to make a final determination on the proposed rule to list the southwest Alaska northern sea otter DPS by a date certain;

C. An order awarding Plaintiff its costs of litigation, including reasonable attorneys' fees as provided in the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D. Provide such other relief as the Court deems just and proper.

Respectfully submitted this the 31ST day of MAY, 2005,

Brent Plater (DC Bar No. 486505)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
bplater@biologicaldiversity.org

Justin Augustine (CA Bar No. 235561)
*Pro hac vice pending*
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff